**EXCELSIOR LODGE NUMBER ONE, INDEPENDENT ORDER OF ODD FELLOWS**, a Hawaii eleemosynary corporation, Applicant–Appellee, v. **EYECOR, LTD.**, a Hawaii corporation, Respondent–Appellant, and **ATKINSON TOWER, INC.**, a Hawaii corporation, Respondent

NO. 15435

and

**EXCELSIOR LODGE NUMBER ONE, INDEPENDENT ORDER OF ODD FELLOWS**, a Hawaii eleemosynary corporation, Applicant–Appellee, v. **EYECOR, LTD.**, a Hawaii corporation, and **ATKINSON TOWER, INC.**, a Hawaii corporation, Respondents–Appellants

NO. 15658

(S.P. NO. 90–0066)

DECEMBER 15, 1992

LUM, C.J., MOON AND LEVINSON, JJ., CIRCUIT JUDGE YIM, IN PLACE OF WAKATSUKI, J., DECEASED, AND CIRCUIT JUDGE SPENCER, IN PLACE OF KLEIN, J., RECUSED

212

OPINION OF THE COURT BY MOON, J.

Petitioner–appellee Excelsior Lodge Number One, Independent Order of Odd Fellows (Excelsior) and respondent–appellant Eyecor, Ltd. (Eyecor) are lessor and lessee, respectively, of a parcel of land underlying 419A Atkinson Drive in Honolulu. Respondent–appellant Atkinson Tower, Inc. (Tower) is a cooperative housing corporation and Eyecor's sublessee. As the result of a rental dispute between Excelsior and Eyecor, an arbitration proceeding provided for in the lease agreement was held, resulting in an award in favor of Excelsior. Excelsior then moved for confirmation of the arbitration award by the circuit court. The motion was granted.

Eyecor, joined by its sublessee Tower, appealed the circuit court's confirmation of the arbitration award, along with several other orders issued by the court. On appeal, Eyecor essentially claims that the arbitration award should not have been confirmed because the arbitrators had failed to apply Hawaii Revised Statutes (HRS) § 519–3(a)(2) (1985), which governs the amount of lease rent payable by cooperative housing corporations (hereinafter, Eyecor's § 519–3(a)(2) claim/issue). Excelsior contends that HRS § 519–3(a)(2) was not applicable to the dispute in issue; however, even if it were, Excelsior

maintains that Eyecor's § 519–3(a)(2) claim was not timely raised under HRS chapter 658, the arbitration and award statute.

The Intermediate Court of Appeals (ICA) held[1] that HRS § 519–3(a)(2) was applicable to the dispute and that Eyecor had properly raised the § 519–3(a)(2) issue in its appeal. Therefore, the ICA vacated the trial court's order confirming the award and remanded the case for a determination as to whether the arbitrators had, in fact, applied the statute. We granted Excelsior's application for a writ of certiorari to review the ICA's decision.

We conclude that Eyecor failed to timely challenge the arbitration award under the arbitration and award statute, HRS chapter 658. We also conclude that because of such failure, Eyecor was precluded from raising the § 519–3(a)(2) issue in its appeal. We therefore reverse the decision of the ICA and affirm the trial court's confirmation of the arbitration award.

## I. BACKGROUND

Excelsior owns the land underlying 419A Atkinson Drive in Honolulu. On March 20, 1957, Excelsior and Eyecor's predecessor–in–interest entered into a written lease with a fixed rental rate for the first twenty years. The lease further provided that, following the initial twenty–year period, the rent for each subsequent ten–year period would be by agreement. If the parties were unable to agree, the lease provided that each shall  ·

> choose an appraiser and these two shall choose
> a third appraiser. All such appraisers shall be

---

[1] *See Excelsior Lodge v. Eyecor, Ltd.*, 9 Haw. App. 354, 847 P.2d 667 (1992).

recognized and qualified appraisers. . . . The appraisers shall deduct from the value found by them the total amount of buildings erected by the Lessees and also any improvement assessments or charges which shall have been levied against the demised premises and paid by the Lessees or for which the Lessees are required to reimburse the Lessor under the terms of this lease. The value found by a majority of the appraisers, less said deductions, shall be deemed the "appraised value" for the purposes of their determining the rental [under the lease].

On October 10, 1958, Eyecor's predecessor–in–interest subleased the property to Atkinson Building, Inc. On October 10, 1960, Atkinson Building assigned its sublessee interest to Tower, a cooperative housing corporation. Excelsior consented in writing to each of these transactions.

The sublease between Eyecor and Tower provided for a profit to Eyecor for the first twenty years. Following that period, the sublease provided that Tower would pay to Eyecor the amount negotiated under the master lease between Eyecor and Excelsior, and that Eyecor would then pay that amount to Excelsior. Eyecor was to make no profit on the sublease after the first twenty years. Additionally, pursuant to the terms of the sublease, Eyecor irrevocably appointed Tower its agent for all subsequent rent negotiations with Excelsior on the master lease.

Meanwhile, in 1982, the Hawaii State legislature enacted HRS § 519–3, which, among other matters, imposed a ceiling on the amount of rent payable by a lessee or sublessee that is a cooperative housing corporation.

When the time for setting the rent between Excelsior and Eyecor for the period 1987–1997 arrived, the parties

conducted lengthy lease rent negotiations, but were unable to agree on an amount. Excelsior then attempted to invoke the arbitration procedure provided for in the master lease; however, Eyecor objected and refused to proceed through such arbitration. Therefore, Excelsior, pursuant to HRS § 658–3,[2] moved for an order to compel arbitration according to the agreement contained in the master lease. In opposition to the motion, Eyecor[3] maintained that the rent ceiling requirement of HRS § 519–3(a)(2) applied because of its sublessee Tower's status as a cooperative housing corporation.[4] Excelsior, on the other

---

[2] HRS § 658–3 provides in pertinent part:

> A party aggrieved by the failure, neglect, or refusal of another to perform under an agreement in writing providing for arbitration, may apply to the circuit court for an order directing that the arbitration proceed in the manner provided for in the agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement or the failure to comply therewith is not in issue, the court hearing the application shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

HRS § 658–3 (1985).

[3] In this, and all subsequent litigation before the circuit court, Eyecor was joined by its sublessee Tower. Because the two parties were represented by the same attorneys, and were, for all substantive purposes, indistinguishable, we will refer to both parties collectively as "Eyecor."

[4] We note that HRS § 519–3(b) provides, in pertinent part, that "[i]n the event the parties to a lease are unable to achieve an agreement under any reopening provision [regarding renegotiation of rent], *the housing finance and development corporation or its designee shall arbitrate*, and its findings shall be binding and conclusive on both parties." HRS § 519–3(b) (Supp. 1991) (emphasis added). We also note that although the parties were unable to agree on a renegotiated lease rent and although there was a disagreement regarding the arbitrator designated by Eyecor, Eyecor did not raise subsection b's requirement that the dispute be arbitrated by "the housing finance and

hand, argued that the statute did not apply to rent negotiations under the *lease* between Excelsior and *Eyecor* because Eyecor is not a cooperative housing corporation. On April 3, 1990, the court granted Excelsior's motion and entered an order compelling the parties to follow the master lease arbitration procedure. Eyecor did not appeal this order, and the arbitration process went forward.

A year later, on April 4, 1991, Eyecor filed a motion seeking a ruling that HRS § 519–3(a)(2) precluded the arbitrators from setting a rental amount in excess of "the amount derived by multiplying the 'owner's basis' by the original percentage rate." HRS § 519–3(a)(2). On April 24, 1991, the trial court ruled "by way of clarification and for the limited purposes of the arbitration between Excelsior Lodge and Eyecor, that [the rent ceiling requirement of] HRS § 519–3 is not applicable" (hereinafter, the § 519–3(a)(2) order).

On April 26, 1991, the arbitrators awarded Excelsior an annual rent of $169,200. On that same day, Excelsior moved for an order confirming the arbitration award

---

development corporation or its designee," *id.*, at the trial level or on appeal. However, in its supplemental brief in opposition to Excelsior's petition for writ of certiorari, Eyecor contends that the arbitrators "did not have subject matter jurisdiction over the dispute" because "the legislature granted exclusive jurisdiction to arbitrate the amount of lease rent pursuant to a statutory formula to the Hawaii Housing Authority and later to the housing finance and development corporation." Eyecor's assertion that HRS § 519–3 applied to the dispute at the trial level and on appeal has been limited to the statute's rental ceiling requirement. Consistent with its position, Eyecor participated in the selection of private arbitrators in accordance with the master lease's arbitration clause. Moreover, we believe that the legislature did not intend that parties subject to HRS § 519–3 could not voluntarily agree to utilize arbitrators of their choice. We view the requirement of HRS § 519–3(b) to apply in situations where the parties have not previously agreed to an arbitrator selection procedure.

pursuant to HRS § 658–8.[5]   On May 6, 1991, Eyecor filed a motion for reconsideration of the trial court's § 519–3(a)(2) order.   Eyecor concurrently filed a notice of appeal[6] regarding the order compelling arbitration and the § 519–3(a)(2) order. We subsequently dismissed that appeal because: 1) the order compelling arbitration was untimely appealed;[7] and 2) the appeal of the § 519–3(a)(2) order was premature because the trial court had yet to rule on Eyecor's motion for reconsideration.

On June 10, 1991, the trial court entered an order confirming the April 26, 1991 arbitration award (confirmation order).  On June 24, 1991 Eyecor timely appealed this confirmation order.[8]   On October 1, 1991, the trial court denied Eyecor's motion for reconsideration of the § 519–3(a)(2) order (reconsideration order).  On October

---

[5] HRS § 658–8 provides in pertinent part:

> At any time within one year after the award is made and served, any party to the arbitration may apply to the circuit court specified in the agreement, or if none is specified, to the circuit court of the judicial circuit in which the arbitration was had, for an order confirming the award. Thereupon the court shall grant such an order, unless the award is vacated, modified, or corrected, as prescribed in sections 658–9 and 658–10.

HRS § 658–8 (1985).

[6] Eyecor's May 6, 1991 notice of appeal was docketed as supreme court case No. 15322, *Excelsior Lodge Number One v. Eyecor, Ltd.* Tower was not a party to this appeal.

[7] An order granting Excelsior's motion to dismiss appeal for lack of jurisdiction was entered on July 23, 1991 in supreme court case No. 15322.

[8] Eyecor's notice of appeal, filed on June 24, 1991, was docketed under supreme court case No. 15435, *Excelsior Lodge Number One v. Eyecor, Ltd.* Tower was not a party to this appeal.

15, 1991, Eyecor filed a second notice of appeal[9] of the following four trial court orders: 1) the order compelling arbitration; 2) the § 519–3(a)(2) order; 3) the confirmation order; and 4) the reconsideration order. Both appeals were consolidated and assigned to the ICA for disposition.

The ICA concluded that it did not have jurisdiction over Eyecor's first appeal, but took jurisdiction over Eyecor's second appeal[10] and ruled that: 1) the order compelling arbitration was "not a final and appealable order;" 2) the order denying Eyecor's motion for reconsideration of the § 519–3(a)(2) order was within the ICA's appellate jurisdiction; 3) HRS § 519–3(a)(2)'s rent ceiling requirement did apply to the arbitration proceeding; and 4) therefore, the order confirming the arbitration award must be vacated and the case remanded for a determination whether the arbitrators had applied HRS § 519–3(a)(2) in arriving at their award. The ICA also stated that if the arbitrators had failed to apply HRS § 519–3(a)(2), then Eyecor would be entitled to an order vacating the arbitrator's award.

---

[9] Eyecor's October 15, 1991 appeal was docketed as supreme court case No. 15658, *Excelsior Lodge Number One v. Eyecor, Ltd.* Tower joined Eyecor on this appeal.

[10] The ICA provided no reason why it declined to hear Eyecor's first appeal, which only challenged the trial court's confirmation order. At the same time, however, it took jurisdiction over Eyecor's second appeal, joined by Tower, which also included a challenge to the confirmation order, along with challenges to three other orders of the trial court. Because we find no basis for the ICA's rejection of Eyecor's first appeal, which is essentially subsumed under its second, we will refer to the consolidation of the two appeals as Eyecor's "appeal." And, because Tower joined Eyecor in the second appeal, we will continue to refer to the two parties collectively as "Eyecor."

Excelsior filed an application for a writ of certiorari in this court seeking our review of the ICA's decision, which we granted.

## II. DISCUSSION

### A. Confirmation of the Arbitration Award

### 1. The Arbitration and Award Statute, HRS Chapter 658

Eyecor's principal contention throughout the circuit court level proceedings and on appeal has been that the rent ceiling provision of HRS § 519–3(a)(2) should apply to its rent dispute with Excelsior. On the other hand, Excelsior argues that Eyecor is precluded from raising its § 519–3(a)(2) claim in this appeal because any challenge to a circuit court's confirmation of an arbitration award is specifically controlled by the provisions of HRS chapter 658.

Excelsior points out that HRS § 658–8[11] requires that the trial court confirm an arbitration award, *"unless the award is vacated, modified, or corrected, as prescribed in sections 658–9 and 658–10."* HRS § 658–8 (emphasis added). HRS § 658–9 provides only four specific grounds upon which an award can be vacated,[12] while

---

[11] *See supra* note 5.

[12] The court may vacate the award:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or any of them;

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the con-

HRS § 658–10 provides only three grounds for modifying or correcting an award.[13]

Additionally, HRS § 658–11 provides that "[n]otice of a motion to vacate, modify, or correct an award [under HRS §§ 658–9 and 658–10], shall be served . . . upon the adverse party or the adverse party's attorney *within ten days after the award is made and served.*" HRS § 658–11 (1985) (emphasis added). Excelsior notes that Eyecor failed to timely serve either a § 658–9 motion to vacate or a § 658–10 motion to modify or correct the award in this case. Therefore, Excelsior submits that the trial court was required to confirm the award, and Eyecor now has no right to appeal the confirmation order because it failed to timely challenge the award in the only manner provided in the arbitration and award statute, HRS chapter 658.

---

troversy; or of any other misbehavior, by which the rights of any party have been prejudiced;

(4)  Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

HRS § 658–9 (1985).

[13] The court may modify or correct an award:

(1)  Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;

(2)  Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

(3)  Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

HRS § 658–10 (1985).

The ICA, relying on this court's decision in **Gozum v. American International Adjustment Co.**, 72 Haw. 41, 805 P.2d 445 (1991), ruled that

> [a] party who disagrees with an arbitration award on the ground that the arbitrators have exceeded their powers has two opportunities to challenge it. First, the party may file an HRS § 658–9 application to vacate the award and serve it as required by HRS § 658–11. Second, the party may wait until the other party applies pursuant to HRS § 658–8 to confirm the award and then challenge the confirmation motion pursuant to HRS § 658–9.

**Excelsior Lodge**, 9 Haw. App. at 365, 847 P.2d at 672.

The ICA's reliance on *Gozum* is misplaced. We acknowledge that one comment in dictum might suggest that a trial court could vacate, modify, or correct an award at a § 658–8 confirmation hearing. However, the specific holding in *Gozum* was that a party would not be barred from asking for a *clarification* of an arbitrator's award at a § 658–8 confirmation hearing, even though that party had failed to bring a timely motion under either HRS §§ 658–9 or 658–10. **Gozum**, 72 Haw. at 45–46, 805 P.2d at 447. Moreover, we pointed out that the notice provision of HRS § 658–11 applied when a party wished to change the substance or the amount of an award, but not when a party merely asked for clarification of an ambiguous award. *Id.* at 46, 805 P.2d at 447.

In **Association of Apartment Owners of Tropicana Manor v. Jeffers**, 73 Haw. 201, 830 P.2d 503 (1992), this court, citing *Gozum*, again ruled that a request for clarification of an arbitration award, which did not seek to change the substance or amount of that award,

could avoid the ten–day service requirement of HRS § 658–11. In *Jeffers*, the parties on one side of an arbitrated dispute who had not moved to vacate, modify, or correct an award sought to re–open the arbitration process for what they termed a "clarification." *Id.* at 212, 830 P.2d at 510. However, this court concluded that the parties were actually seeking a modification or correction of the award "in the guise of a clarification." *Id.* at 212–14, 830 P.2d at 510–11.

We reiterated in *Jeffers* that in order to change an award under HRS chapter 658, a party must timely move either to vacate the award under HRS § 658–9 or to modify or correct it under HRS § 658–10. *Id.* at 213, 830 P.2d at 510. We also noted that "[i]n *Gozum*, we distinguished an arbitrator's clarification of an ambiguous award from a court's vacation, modification, or correction of an award." *Id.* We specifically stated, in *Jeffers*, that "[i]mplicit in our decision in *Gozum* to allow the arbitrator's clarification was the understanding that the total amount the insureds could recover would remain [the same amount] which appeared on the face of the award. *Clearly, the clarification would not have changed the amount of the award.*" *Id.* at 214, 830 P.2d at 511 (emphasis added).

In this case, Eyecor is seeking a substantial change in the arbitration award. According to Eyecor's position, the annual rent, which the arbitrators determined to be $169,200, would not have exceeded $82,500 had the statutory formula prescribed in HRS § 519–3(a)(2) been applied. It is obvious that Eyecor is seeking more than a mere "clarification," as that term is used in *Gozum* and *Jeffers*, but rather a substantive change of the award.

Thus, we conclude that because Eyecor failed to timely bring either a § 658–9 motion to vacate or a

§ 658–10 motion to modify or correct the award and because it is seeking more than a mere clarification, Eyecor is precluded from challenging the trial court's confirmation order.

## 2. HRS § 658–15

In addition to relying on *Gozum* for authority to vacate the trial court's confirmation order, the ICA specifically cites to HRS § 658–15 (1985), seemingly in the context of its authority to review the trial court's April 3, 1990 order to compel arbitration, despite Eyecor's failure to timely appeal that order. *Excelsior Lodge*, 9 Haw. App. at 363–64, 847 P.2d at 672. Although the precise purpose for citing to HRS § 658–15 is unclear, we believe that the reference implies that HRS § 658–15 somehow confers upon appellate courts general authority to review trial court orders under HRS chapter 658, including the confirmation order, even though Eyecor failed to timely bring either a § 658–9 or a § 658–10 motion. Assuming we apprehend the ICA's implication correctly, we believe it is necessary to discuss this issue.

HRS § 658–15 provides in relevant part that "[u]nless the agreement for award provides that no appeal may be taken[,[14]] *an appeal may be taken* from an order vacating an award, or *from a judgment entered upon an award, as from an order or judgment in an action[.]*" HRS § 658–15 (1985) (emphasis added). Under HRS § 658–12, the filing of an order confirming an arbitration award "shall constitute the entry of judgment." HRS § 658–12 (1985). "The judgment entered in accordance with section 658–12 has the same force and effect, in

---

[14] The appraisal procedure contained in the master lease in the present case does not contain any restriction on appeals.

all respects as, and is subject to all the provisions of law relating to, a judgment in an action[.]" HRS § 658–14 (1985). Therefore, an order by the trial court granting a motion to confirm an award can arguably be appealed in the same manner as any other "order or judgment in an action," pursuant to HRS §§ 658–12, 658–14, and 658–15.

However, this court has set strict limits to the authority of an appellate court reviewing a confirmation order under HRS § 658–15. In *Mars Constructors, Inc. v. Tropical Enterprises, Ltd.*, 51 Haw. 332, 460 P.2d 317 (1969), Tropical Enterprises, Ltd. (Tropical) moved to have an arbitration award modified or corrected pursuant to HRS § 658–10. After a hearing, the trial court implicitly denied the motion, ruling instead that the award be confirmed. The trial court held that

> the award of the arbitrators would be confirmed even though they "may have erred in the determination of fact and even the application of the law," because under the provision of HRS § 658–10, the court's power to review and correct or modify arbitration awards is limited and the grounds urged by the appellant for modifying or correcting the arbitration award were neither of the three grounds provided for by the statute.

*Id.* at 334, 460 P.2d at 318. Tropical appealed pursuant to HRS § 658–15. *Id.*

Tropical pointed out that HRS § 658–15 gives a party the right to appeal an arbitration award unless the arbitration agreement provided that no appeal could be taken, which was not the case in *Mars*. Tropical also noted that HRS § 641–2 generally authorizes this court to affirm, reverse, or modify a trial court judgment, and "to correct

any error appearing on the record."[15] *Id.* Therefore, Tropical concluded that this court's authority under HRS § 658–15 must be co–extensive with its general authority under HRS § 641–2. Implicit in Tropical's claim was the contention that because HRS § 658–15 apparently allows a party to appeal an arbitration award "as from an order or judgment in an action," this court must have the same general authority to review an award under HRS § 658–15 that it does under HRS § 641–2 to review any other "judgment, order, or decree of a circuit court . . . in a civil matter." HRS § 641–2.

This court responded to Tropical's argument by summarizing in detail the policy underlying the Arbitration and Award Statute, HRS chapter 658, and the reasons for strictly constraining judicial review of arbitration awards:

> It is generally considered that parties resort to arbitration to settle disputes more expeditiously and inexpensively than by a court action . . . . [I]t must be deemed that the primary purpose of arbitration is to avoid litigation.
>
> In furtherance of this objective, our legislature enacted the Arbitration and Awards statute, HRS, Ch. 658. . . .

---

[15] The *Mars* opinion mistakenly cites to a § 641–24, which does not exist. HRS § 641–2, the correct section, provides in pertinent part:

> In case of appeal to the supreme court from a judgment, order, or decree of a circuit or district court . . . in a civil matter, the supreme court shall have power to review, reverse, affirm, amend, or modify such judgment, order, or decree in whole or in part, and as to any or all of the parties. . . .
>
> . . . The supreme court may correct any error appearing on the record[.]

HRS § 641–2 (1985).

> . . . This court has decided to confine judicial review [of awards under the statute] to the strictest possible limits. . . .
>
> . . . [W]e believe an extensive judicial review of arbitration awards would frustrate the intent of the parties to avoid litigation and would also nullify the legislative objective in the enactment of the Arbitration and Awards statute.

*Id.* at 334–35, 460 P.2d at 318–19 (citations omitted).

The *Mars* court then directly confronted Tropical's contention that HRS § 658–15, in tandem with HRS § 641–2, gives this court authority to review a confirmation award to the same extent as any other judgment and concluded that it does not. Instead, the court held that appellate courts reviewing a § 658–8 confirmation award under HRS § 658–15 are restricted to a consideration of the seven specific grounds included in HRS §§ 658–9 and 658–10:

> We believe that the legislative intent in § 658–9 and § 658–10 was to restrict and curtail all judicial review of arbitration awards and not only review by circuit courts, and we hold that § 658–9 and § 658–10 also restrict the authority of this court to review judgments entered by circuit courts confirming the arbitration awards pursuant to the provisions of the Arbitration and Awards statute.

*Id.* at 336, 460 P.2d at 320.

The *Mars* court held that, even if the arbitrators had made mistakes in the determination of fact or in the application of law, the trial court's review was necessarily limited by the three specific grounds provided by HRS § 658–10, and none of those grounds was at issue. The

*Mars* court thus refused to review the trial court's judgment even though Tropical had timely served a § 658–10 motion prior to its appeal of the arbitration award under HRS § 658–15.

In the present case, the ICA considered one of Eyecor's substantive arguments, despite its failure to bring a motion under either §§ 658–9 or 658–10. We believe the policy reasons for strict constraints over judicial review of arbitration awards, which led to this court's refusal in *Mars* to review the trial court's confirmation order, compel us to refuse to consider Eyecor's appeal of the confirmation order in this case, where, unlike the appellant in *Mars*, Eyecor has completely failed to avail itself of the proper statutory mechanisms for challenging the award.

We now expressly hold that a party who seeks to change an arbitration award, but fails to follow the specific statutory provisions for challenging the award by timely bringing a motion under either §§ 658–9 or 658–10, is foreclosed from subsequently appealing a § 658–8 confirmation order under HRS § 658–15.[16] To allow a party a second chance at litigation after it has conspicuously failed to comply with the specific statutory provisions available for challenging an award would frustrate the clear policy of facilitating the legislative objectives behind the arbitration and award statute.

---

[16] HRS § 658–15 will continue to be available to parties seeking *clarification* of arbitration awards under *Gozum*, even though they have not previously brought a § 658–9 or a § 658–10 motion. Likewise, HRS § 658–15 will be available to parties who have previously brought such motions. These parties will have the option of either appealing the trial court's denial of their specific §§ 658–9 or 658–10 motion, or of appealing a trial court's subsequent confirmation order, though that appeal will be limited to a consideration of the seven specific grounds timely raised under HRS §§ 658–9 and 658–10.

Accordingly, we hold that the ICA erred in utilizing Eyecor's § 519–3(a)(2) claim to vacate the trial court's order granting Excelsior's § 658–8 motion to confirm the award.

## B. **Eyecor's § 519–3(a)(2) Claim**

Eyecor has also appealed both the trial court's § 519–3(a)(2) order and the order denying Eyecor's motion for reconsideration of that ruling. As stated previously, Eyecor's principal contention has been that HRS § 519–3(a)(2) should apply to its rent dispute with Excelsior.[17] According to the ICA:

HRS § 519–3[(a)(2)] imposes a ceiling on the amount of the [s]ublease rent legally due from [Tower] to [Eyecor]. The question is whether HRS § 519–3[(a)(2)] imposes an identical ceiling on the amount of the [l]ease rent legally due from [Eyecor] to [Excelsior]. If it does not, [Eyecor] may be legally obligated to pay [Excelsior] more [l]ease rent than the [s]ublease rent it is legally entitled to collect from [Tower].

---

[17] HRS § 519–3 provides in pertinent part:

(a) All leases, including subleases executed by a cooperative housing corporation as lessee, and all leases, including subleases acquired by a cooperative housing corporation by assignment, whether executed prior to or after June 12, 1982, which directly or by incorporation provide for reopening of the contract for renegotiation of lease rent terms, shall provide or be construed in conformity with the following:

. . . .

(2) Upon renegotiation, the lease rent payable by a cooperative housing corporation as lessee, sublessee, or assignee shall not exceed the amount derived by multiplying the "owner's basis" by the original percentage rate.

HRS § 519–3 (1985).

*Excelsior Lodge*, 9 Haw. App. at 366, 847 P.2d at 673. However, Excelsior argues that Eyecor's appeal of this issue has essentially been mooted by the trial court's order confirming the arbitration award. We agree.

We have determined that because Eyecor failed to timely challenge the arbitration award, the trial court was required to grant Excelsior's § 658–8 motion to confirm. Additionally, we have concluded that Eyecor is foreclosed from attempting to change the award by appealing the confirmation order under HRS § 658–15. Eyecor has no remaining avenue by which it can challenge the trial court's confirmation order. Even if it were to prevail on its appeal of the § 519–3(a)(2) order, or on its appeal of the order denying its motion for reconsideration of that ruling, Eyecor could not use that decision to challenge the award itself. Therefore, Eyecor's appeals of both orders are moot. However, we believe it is necessary to point out that the ICA's interpretation of HRS § 519–3(a)(2) and its applicability to this case should not be understood as stating the law on this issue.

The ICA held that the language of HRS § 519–3(a)(2) unambiguously

> imposes a ceiling on the amount of the rent legally due *all along the entire strata or chain from the sublessee cooperative housing corporation to the lessor*. It imposes a ceiling on the amount of the sublease rent legally due from the sublessee–cooperative housing corporation to the lessee–sublessor and it imposes the same ceiling on the lease rent legally due from the lessee–sublessor to the lessor.

*Excelsior Lodge*, 9 Haw. App. at 366, 847 P.2d at 673 (emphasis added). By its express language, HRS

§ 519–3(a)(2) is clearly meant to govern circumstances in which a lease or a sublease provides for renegotiations of lease rent terms, and a cooperative housing corporation is either the lessee under the lease, or the sublessee under the sublease. However, the plain language of the statute does *not* expressly provide for the situation in the case at bar, where the renegotiation is pursuant to a master lease between a lessor, Excelsior, and a lessee, Eyecor, which does not itself come under HRS § 519–3, but whose *agent* for the lease rent renegotiations, Tower, happens to be a cooperative housing corporation. Neither does the plain language of HRS § 519–3(a)(2) provide that a *sublessee's* status as a cooperative housing corporation will automatically apply to lease rent negotiations under *a master lease* between a lessee who is not a cooperative housing corporation and the lessor.

Furthermore, we believe the ICA's interpretation of HRS § 519–3(a)(2) arguably raises constitutional issues. According to the ICA, the amount of lease rent payable by Eyecor to Excelsior could be reduced by more than one–half of the arbitration award or could be limited to less than one–half of the award, thereby resulting in the possible taking of Excelsior's property without due process and/or the denial of equal protection under the law. Without resolving these constitutional questions, we conclude the ICA failed to adequately demonstrate that HRS § 519–3(a)(2) should have been applied to the arbitration proceedings in the present case.

## C. The Order Compelling Arbitration

Eyecor has also appealed the trial court's order compelling arbitration in this case pursuant to HRS

§ 658–3.[18] As previously noted, the ICA held that the order to compel arbitration was not final and thus was not an appealable order. *Excelsior Lodge*, 9 Haw. App. at 363–64, 847 P.2d at 672. We disagree.

In *Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 705 P.2d 28 (1985), this court held that orders compelling arbitration under HRS § 658–3 are appealable orders within the contemplation of HRS § 641–1(a) (appeals in civil actions). The *Swinerton* court determined that there exists a small class of orders, including those under HRS § 658–3, which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 105, 705 P.2d at 34 (citation omitted); *see also Koolau Radiology, Inc. v. Queen's Medical Ctr.*, 73 Haw. 433, 834 P.2d 1294 (1992); *Westin Hotel Co. v. Universal Inv., Inc.*, 72 Haw. 178, 179–80, 811 P.2d 467, 468 (1991).

Eyecor contends that it can validly appeal the trial court's § 658–3 order in the present case according to the ICA's decision in *Kukui Nuts of Hawaii, Inc. v. R. Baird & Co.*, 7 Haw. App. 598, 789 P.2d 501, *cert.*

---

[18] The trial court's order compelling arbitration contained two separate provisions: 1) it compelled Eyecor to participate in the lease–provided arbitration procedure generally, without specifying any particular actions on Eyecor's part; and 2) it also disqualified an arbitrator previously appointed by Eyecor, whom the court implicitly found was not impartial, and specifically compelled Eyecor to participate in the arbitration procedure by appointing another impartial arbitrator. The trial court thus included one specific action required by Eyecor within the context of an overall § 658–3 order compelling Eyecor to participate in the arbitration procedure under the lease agreement.

*denied*, 71 Haw. 668, 833 P.2d 900 (1990), where the ICA held that an unappealed — though independently appealable — collateral order, such as one under HRS § 658–3, can be considered by an appellate court reviewing a final judgment in the same case. In *Kukui Nuts*, the appellant argued that although it had failed to timely appeal certain independently appealable collateral orders, the ICA could still review them on an appeal from the final judgment in the same case. *Id.* at 617, 789 P.2d at 513.

The ICA noted that the authorities are split on the propriety of allowing the review of unappealed collateral orders from a final judgment. The ICA then cited with favor the following statement:

> Any rule that requires forfeiture of appellate opportunities for guessing wrong about an unclear rule would greatly increase the costs of the collateral order doctrine by forcing protective appeals in many situations of doubtful appealability.

*Id.* at 617, 789 P.2d at 514 (citing 15 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure, *Jurisdiction* § 3911 at 498–99 (1976)). The ICA proceeded to hold that "where relief can be afforded from the terms of a collateral order upon appeal from the final judgment, the collateral order may be reviewed at that time, and the right to appeal the collateral order is not forfeited because it was not appealed from when it was entered." *Id.*

However, in this case, Eyecor is foreclosed from appealing the trial court's order compelling arbitration because it had appealed that decision once before. On May 6, 1991, Eyecor filed a notice of appeal,[19] which raised

---

[19] *See supra* note 6.

the propriety of the trial court's April 3, 1990 order compelling arbitration. This court subsequently dismissed that appeal as untimely because Eyecor had waited until well beyond the thirty–day limit mandated by Hawaii Rule of Appellate Procedure 4(a)(1) to bring its appeal. Therefore, because the ICA's ruling in *Kukui Nuts* specifically addressed collateral orders that were not originally appealed, Eyecor's reliance on that ruling to appeal the order compelling arbitration is misplaced.

We now take this occasion to restrict the broad authority seemingly conferred on reviewing courts by the ICA's ruling in *Kukui Nuts*. In the present case, the rationale of *Kukui Nuts* may have justified appellate review of a hypothetical collateral order on appeal from a final judgment on the basis that not to do so would tend to "forc[e] protective appeals in many situations of *doubtful* appealability." *Id.* (emphasis added). However, as the foregoing discussion of *Swinerton* demonstrates, there is nothing doubtful in this jurisdiction about the appealability of § 658–3 orders to compel arbitration. Indeed, Eyecor itself appealed the April 3, 1990 order, albeit more than a year late. The policies that have moved this court to constrain judicial review of arbitration awards within the strictest possible limits likewise militate against giving a party who has failed to appeal a § 658–3 order a second chance to attack it on an appeal of a confirmation order.

Given its principal claim that the provisions of HRS § 519–3(a)(2) apply to the instant arbitration, Eyecor should have immediately appealed the trial court's initial decision to compel arbitration in order to have the issue settled at the most opportune time in the dispute. Instead, Eyecor in effect sat on its hands and allowed the arbitration process to proceed for more than a year before it again

decided to challenge the process on the same grounds it had argued to the trial court prior to the § 658–3 order to compel arbitration.

This court will not countenance procedures that allow parties to frustrate the policies and legislative objectives behind the arbitration and award statute. We therefore hold that a reviewing court shall not consider an unappealed § 658–3 order compelling arbitration on an appeal from a final judgment in the same case.

## III. **CONCLUSION**

Based on the foregoing, we reverse the ICA's decision and affirm the circuit court's June 10, 1991 order granting Excelsior's motion for confirmation of the April 26, 1991 award.

On the briefs:

*G. Stephen Elisha, Philip L. Lahne,* and *Richard S. Ekimoto* (Dinman, Nakamura, Elisha & Lahne) for Respondents–Appellants Eyecor, Ltd. and Atkinson Tower, Inc.

*Rosemary T. Fazio* and *Keith Yonamine* (Ashford & Wriston) for Applicant–Appellee Excelsior Lodge Number One, Independent Order of Odd Fellows.