160 P.3d 1250

Edward SHER and Mona Sher,
Plaintiffs–Appellees,

v.

Robert J. CELLA; CBIP, Inc. dba Cold-
well Banker Island Properties; Tom
Tezac, Defendants–Appellants,

and

Sotheby's Wailea Realty Corporation;
and Does 1–25, Defendants–
Appellees.

No. 27715.

Intermediate Court of Appeals of Hawai'i.

April 11, 2007.

Reconsideration Denied May 4, 2007.

Roy F. Hughes, Ross N. Taosaka, Honolulu, Catherine L. Wiehe, (Hughes & Taosaka), on the briefs, for defendants-appellants.

William M. McKeon, Keri C. Mehling, Wailuku. (Paul Johnson Park & Niles), on the briefs, for plaintiffs-appellees.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

Defendants–Appellants Robert J. Cella (Cella), CBIP, Inc. dba Coldwell Banker Island Properties (CBIP), and Tom Tezac (Tezac) appeal from (1) the "Order Granting Plaintiffs Edward Sher and Mona Sher's Motion to Compel Mediation and Arbitration" filed on November 10, 2005, and (2) the "Order Denying Defendants Robert J. Cella, CBIP, Inc. dba Coldwell Banker Island Properties, and Tom Teza[c]'s Motion for Reconsideration of Order Granting Plaintiffs Edward Sher and Mona Sher's Motion to Compel Mediation and Arbitration Filed May 24, 2005 and, Alternatively, for Clarification

and Certification Under Rule 54(b) [Hawai'i Rules of Civil Procedure (HRCP)]" filed on December 23, 2005. Both orders were entered by the Circuit Court of the Second Circuit.[1]

On appeal, CBIP, Cella, and Tezac (collectively, Appellants) argue that the circuit court erred

(1) by granting the "Motion to Compel Mediation and Arbitration" (Motion to Compel Arbitration) filed on May 24, 2005 by Plaintiffs–Appellees Edward Sher and Mona Sher (the Shers), and

(2) by denying Appellants' "Motion for Reconsideration of Order Granting Plaintiffs Edward Sher and Mona Sher's Motion to Compel Mediation and Arbitration filed May 24, 2005 and, Alternatively, for Clarification and Certification Under Rule 54(b) HRCP" (Motion for Reconsideration) filed on November 18, 2005.

We reverse the circuit court's orders compelling mediation and arbitration and denying the Motion for Reconsideration.

**I.**

In January 2003, the Shers purchased a $7.5 million oceanfront residence (Property) situated in Kihei on the Island of Maui. CBIP was the listing broker on the Property pursuant to an Exclusive Right–to–Sell Listing Agreement[2] (Listing Contract) that had been executed by the seller of the Property (Seller) and CBIP in January 2002. Cella was a broker/owner of CBIP and one of the listing agents for the Seller. Tezac was an independent contractor and agent/salesperson for CBIP and represented the Shers in their purchase of the Property. On December 20, 2002, the Shers and the Seller executed an Acquisition Agreement (Acquisition Agreement) for purchase and sale of the Property.[3]

1. The Honorable Joseph E. Cardoza presided.

2. Paragraph 13 of the Exclusive Right–to–Sell Listing Agreement (Listing Contract) specified that disagreements arising out of the Listing Contract would be subject to non-binding mediation and, if mediation failed, then neutral binding arbitration. The same paragraph also specified that if both parties were "involuntarily named as

defendants in a lawsuit by a third party in any matter arising out of this agreement, this paragraph shall no longer be binding on either of us."

3. Section 8.G. of the Acquisition Agreement (Acquisition Agreement) contained an arbitration provision requiring disputes between purchaser and seller or between purchaser and/or seller and a broker or a broker's sales agent to be

At some point in mid-to-late 2003, the Shers began discovering alleged defects in the Property that ultimately led them to file a complaint. On March 14, 2005, the Shers filed their complaint against Appellants, Sotheby's and Wailea Realty Corporation.[4] The complaint contained six counts: (1) misrepresentation and non-disclosure, (2) breach of contract, (3) breach of duty of good faith and fair dealing, (4) negligence, (5) deceptive trade practices, and (6) unjust enrichment. Specifically, the Shers alleged that Appellants had failed to disclose various defects in the property, which defects were known or should have been known.

On May 24, 2005, the Shers filed their Motion to Compel Arbitration. After a hearing, the circuit court, on November 10, 2005, entered its order granting the motion. Appellants moved for reconsideration and, in the alternative, for "clarification of the grounds upon which the [circuit court] granted the Motion to Compel and certification under Rule 54(b) of [HRCP] so that the Hawaii Supreme Court can address the novel issues presented here." After a hearing, the circuit court entered its order on December 23, 2005 denying the Motion for Reconsideration.

Appellants timely filed their notice of appeal.

## II.

■■■ A petition to compel arbitration is reviewed *de novo*. The standard is the same as that which would be applicable to a motion for summary judgment, and the trial court's decision is reviewed using the same standard employed by the trial court and based upon the same evidentiary materials as were before it in determination of the motion.

*Douglass v. Pflueger Hawaii, Inc.*, 110 Hawai'i 520, 524–25, 135 P.3d 129, 133–34 (2006)

(internal quotation marks, citations, and brackets omitted) (quoting *Brown v. KFC Nat'l Mgmt. Co.*, 82 Hawai'i 226, 231, 921 P.2d 146, 151 (1996)).

## III.

Appellants contend they cannot be compelled to participate in binding arbitration because they never signed the Acquisition Agreement between the Shers and the Seller that contained an arbitration clause. Appellants argue that because neither the Shers nor the Seller were agents of CBIP, Appellants cannot be bound under an agency theory; because CBIP did not sign the agreement, estoppel cannot apply; and because Appellants were not third-party beneficiaries of the Acquisition Agreement, they cannot be compelled to participate in binding arbitration.

### A. Appellants' appeal is timely.

First, we must address the Shers' contention that this appeal is untimely. The Shers argue that because Hawai'i has a policy favoring arbitration of disputes and because the Hawai'i legislature expressly provided for immediate appeal of an order *denying* a motion to compel arbitration, but not an order *granting* such a motion, this appeal is premature. The Shers further state that allowing this appeal would undermine the policy favoring arbitration as more economical and less burdensome and time-consuming alternative to litigation.

■■■ An order granting a motion to compel arbitration is final and appealable, notwithstanding the Shers' argument to the contrary. In *Fireman's Fund Ins. Co. v. AIG Hawai'i Ins. Co.*, 109 Hawai'i 343, 354–55, 126 P.3d 386, 397–98 (2006), the Hawai'i Supreme Court allowed a direct appeal from a similar order.[5] The circuit court's order

---

submitted to mediation and, if mediation failed, then to neutral binding arbitration before Dispute Prevention Resolution of Honolulu, Hawai'i.

4. On October 14, 2005, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 41(a), the Shers voluntarily dismissed Sotheby's and Wailea Realty Corporation from the lawsuit.

5. In considering HRS Chapter 658, § 658–3 (Chapter 658 was repealed in 2002 and replaced with Chapter 658A), the Hawai'i Supreme Court held that an order compelling arbitration was immediately appealable. *Excelsior Lodge Number One, Indep. Order of Odd Fellows v. Eyecor, Ltd.*, 74 Haw. 210, 231, 847 P.2d 652, 662 (1992).

granting the Motion to Compel Arbitration is one of that small category of orders which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Excelsior Lodge Number One, Indep. Order of Odd Fellows v. Eyecor, Ltd.*, 74 Haw. 210, 231, 847 P.2d 652, 662 (1992) (quoting *Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg*, 68 Haw. 98, 105, 705 P.2d 28, 34 (1985)). Indeed, this court has also recognized that orders compelling arbitration are immediately appealable. *Simbajon v. Gentry*, 81 Hawai'i 193, 196, 914 P.2d 1386, 1389 (App. 1996).

**B. The arbitration provision in the Acquisition Agreement is insufficient to bind Appellants.**

Appellants argue that because they were not signatories to the Acquisition Agreement, they are not bound by the terms of the arbitration provision in that agreement. Appellants cite to *Luke v. Gentry Realty, Ltd.*, 105 Hawai'i 241, 247, 96 P.3d 261, 267 (2004), and Hawaii Revised Statutes (HRS) Chapter 658A (the Uniform Arbitration Act), § 658–7(c), in support of the proposition that a court cannot force a party to arbitrate in the absence of an agreement to do so. Appellants also cite *Merrill Lynch Investment Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2nd Cir.2003), in support of their argument that unwilling non-signatories cannot be compelled to arbitrate by signatories who are willing to arbitrate. The Shers argue that *Luke* allows certain non-signatories to enforce arbitration provisions and thus supports a long-standing policy of the Hawai'i courts favoring arbitration as a manner of dispute resolution. The Shers contend that Appellants did not argue *Merrill Lynch* until their Motion for Reconsideration and thus the circuit court did not err by rejecting an argument not properly before it, and that *Merrill Lynch* actually stands for the proposition that a recalcitrant non-signatory can be compelled to arbitrate in circumstances such as this case.

"Arbitration is a matter of contract; so 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Merrill Lynch*, 337 F.3d at 131 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). The parties agree that Appellants were non-signatories to the Acquisition Agreement between the Shers and the Seller. Therefore, under *Merrill Lynch*, Appellants cannot be bound by the express provisions of that agreement. *Id.* at 131.

The Shers sought to establish an alternate basis upon which to impose the arbitration provision against Appellants under one of the following five theories: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995). This court will consider the alternate bases advanced by the Shers in the order in which they are raised.

**C. The Shers cannot employ agency principles to invoke the arbitration clause.**

Appellants contend they cannot be compelled by the Shers to arbitrate because the Shers lacked authority to bind Appellants under traditional agency principles. Appellants argue that while traditional agency law states that a principal should be bound by its agent's conduct, the Shers are actually *principals* seeking to bind their *agents*—a manifest reversal of traditional agency rules. Appellants cite to *Corps Construction, Ltd. v. Hasegawa*, 55 Haw. 474, 522 P.2d 694 (1974), in support of the principle that "[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." *Id.* at 476, 522 P.2d at 695 (quoting *Restatement (Second) of Agency* § 320 (1958)). Appellants state that Cella and Tezac were the agents of the Seller and the Shers, respectively, in effectuating the sale, but Cella and Tezac did not sign the Acquisition Agreement containing the agreement to arbitrate provision; therefore, while Cella and Tezac had the authority to bind the

Seller and the Shers to a transaction relating to the Property, the Seller and the Shers did not have authority to bind Cella and Tezac in any way. Appellants similarly note that neither the Shers nor the Seller were CBIP's agents and thus the Shers and the Seller lacked the authority to bind CBIP in any way.

■ The Shers argue that Appellants can be bound under traditional agency principles and cite to several cases from various federal circuits holding that agents were covered by arbitration clauses governing their principals. The principle that a non-signatory agent may, under certain circumstances, invoke an arbitration provision against an unwilling principal who is a signatory to an agreement containing an arbitration provision is settled under Hawai'i law. *Luke*, 105 Hawai'i at 248, 96 P.3d at 268. The obverse is not necessarily true where, as here, the principal who is a signatory to a contract containing an arbitration provision seeks to enforce that provision against a non-signatory agent.

■ The rule set forth in *Luke* that a non-signatory agent may invoke an arbitration agreement against a signatory principal in this manner is subject to two conditions: first, the signatory must rely on the terms of the written contract in asserting claims against the non-signatory, thus using the contract as a weapon against the non-signatory in a manner that gives the non-signatory standing to invoke other terms in that contract; and second, a signatory to a contract with an arbitration provision raises allegations "of substantially interdependent and concerted misconduct by both the non[-]signatory and one or more of the signatories to the contract." *Id.* As to the first ground, the Shers are not invoking the arbitration provision from a defensive posture against a signatory attacker whose claims are dependent on the terms of the contract as described in *Luke;* rather, they are using the provision offensively. As to the second ground, the Shers are raising allegations of "substantially interdependent and concerted misconduct by both [a] non-signatory and one or more of the signatories"; however, the Shers still may not invoke the arbitration clause in this manner because, unlike in *Luke* where a non-

signatory party voluntarily invoked the arbitration clause, the non-signatory parties in this case are not voluntarily invoking the arbitration clause, but are resisting arbitration on ground that they are non-signatories to the contract. Thus, neither of the two reasons for allowing a non-signatory to invoke an arbitration clause against a signatory as set forth in *Luke* applies here. The Shers cannot employ agency principles to invoke the arbitration clause in this manner.

### D. The Shers may not rely on a theory of equitable estoppel.

■ Appellants argue that their receiving a commission on the sale of the Property cannot estop them from avoiding binding arbitration, and they cite *Thomson–CSF* in support of this argument. The Shers respond by stating the axiom that " '[t]he doctrine of equitable estoppel precludes a party from enjoying the rights and benefits under a contract while at the same time avoiding its burdens and obligations.' *Intergen N.V. v. Grina*, 344 F.3d 1[3]4, 145 (1st Cir.2003)." The Shers contend that because Appellants accepted their commission on the sale of the Property, which commission resulted from the Acquisition Agreement the Shers entered into with the Seller, Appellants should be estopped from denying that the arbitration provision in the Acquisition Agreement also covers them.

In *Thomson–CSF*, a federal district court ordered Thomson–CSF to arbitrate its claims against defendant Evans & Sutherland Computer Corp. based on language contained in a "Working Agreement" entered into between Sutherland and Rediffusion Simulation Limited (a company that had been purchased by Thomson–CSF). 64 F.3d at 775. The United States Court of Appeals for the Second Circuit held that the benefit obtained by Thomson–CSF as a result of the contract in question (the elimination of Rediffusion from a particular market sector) was too indirect to form the basis for estopping the non-signatory from avoiding arbitration. *Id.* at 779. In that case, the benefit asserted resulted not from the contract, but from changed market conditions occurring as a result of the contract. *Id.*

Like Thomson–CSF, Appellants here received no benefit as a result of the Acquisition Agreement, but rather they accepted, after the consummation of the transaction, an indirect benefit. Although the commission is referred to in the Acquisition Agreement, the Seller's obligation to pay that commission was not created by that agreement; rather, the obligation to pay was created by virtue of the Listing Contract executed in January 2002 by CBIP and the Seller. Even if the Acquisition Agreement had not referred to any commission at all, that commission would still have been due by virtue of the Listing Contract.

On the subject of equitable estoppel, the United States Court of Appeals for the Fourth Circuit has held that "a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when [the party] has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir.2000). Appellants, by accepting the commission resulting from the sale of the Property, have not embraced the Acquisition Agreement to the degree necessary to subject them to its terms, including the arbitration provision contained therein. Other than Appellants' acceptance of their sales commission, the record in this case shows no affirmative embracing of the agreement by Appellants. Had Appellants attempted to enforce some provision of the Acquisition Agreement or receive its benefit in some other manner, a contrary result may have resulted. *Thomson–CSF*, 64 F.3d at 779. Therefore, the Shers may not rely on a theory of equitable estoppel solely because Appellants received their commission on the sale of the Property.

**E. The Shers cannot bind Appellants to the arbitration provision in the Acquisition Agreement as third-party beneficiaries to that agreement.**

Appellants argue that they were not third-party beneficiaries to the arbitration agreement between the Shers and the Seller and thus they cannot be compelled to arbitrate on this ground. They cite *Intergen N.V.*, 344 F.3d at 146, in support of this argument. The Shers answer by arguing that a non-signatory of a contract may remain subject to arbitration if the non-signatory is a third-party beneficiary of that contract and, in this case, Appellants received an intended and direct benefit flowing from the Acquisition Agreement. The Shers argue that the Acquisition Agreement expressly intended to confer a benefit on Appellants and thus the *Intergen N.V.* case (where no express intent existed to confer such a benefit) is inapplicable.

It is a commonly-accepted axiom that a holder of third-party beneficiary status may not avoid otherwise enforceable contract provisions. *Intergen, N.V.*, 344 F.3d at 146. "[A] third-party beneficiary of a contract containing an arbitration clause can be subject to that clause and compelled to arbitrate on the demand of a signatory." *Id.* The threshold question here is whether Appellants are third-party beneficiaries of the Acquisition Agreement executed by the Shers and the Seller. The law requires a "special clarity" in making this assessment. *Id.* Our review of the Acquisition Agreement reveals that the signatories did intend to confer a benefit on Appellants and thus Appellants can be considered third-party beneficiaries to that agreement. In reaching this conclusion, we are mindful that we must not distort the manifest intentions of the contracting parties or reach conclusions contrary to the clear language of the agreement. *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 764, 151 L.Ed.2d 755 (2002).

Paragraph 8.E. of the Acquisition Agreement states:

E. *Commission.* Seller agrees to pay to Coldwell Banker Island Properties, Wailea Realty, and Sotheby's collectively a real estate broker's commission of Three Hundred Fifty Thousand and no/100 Dollars ($350,000.00) only in the event that [the Shers] complete[ ] the transaction and closing occurs, which commission shall come from the closing proceeds at Escrow.

This paragraph clearly and unambiguously states an intent to confer a benefit upon CBIP.[6] This is not a situation where the non-signatory third party simply stood to receive a benefit as a result of the contract; rather, the non-signatory third party was explicitly named in the contract and thus is an intended third-party beneficiary.[7] *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196–97 (3rd Cir.2001); *McCarthy v. Azure*, 22 F.3d 351, 362 (1st Cir.1994). Contrary to Appellants' assertions, the Acquisition Agreement does satisfy the three-part test described in *E.I. DuPont de Nemours*, in that the contracting parties did intend that CBIP benefit from the agreement (in the form of the broker's commission), the benefit was intended in satisfaction of a pre-existing obligation to that party (the requirement described in the Listing Contract that the Seller pay a commission to the brokers in the event of a sale), and the intent to confer the benefit was a material part of the parties' purpose in entering into the agreement (the parties could not have conveyed the property without paying the commission due to the brokers). *Id.* at 196.

■■■ However, although the Shers demonstrate at least CBIP's status as a third-party beneficiary under the Acquisition Agreement, the Shers fail to demonstrate, as they must, that CBIP's status as a third-party beneficiary is related to the specific claim asserted against CBIP. *Id.* at 197 ("[A] third[-]party beneficiary will only be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third[-]party beneficiary status."). The claims in this lawsuit arose out of the alleged "material and substantial construction defects" present at the Property and did not arise out of the commission due to CBIP or the manner of the the commission's payment. Therefore, CBIP cannot be bound to the arbitration provision in the Acquisition Agreement due to its status as a third-party beneficiary to that agreement.

## F. The arbitration provision contained in the Acquisition Agreement is not ambiguous.

Finally, Appellants argue that the arbitration provision is ambiguous and unenforceable as to Appellants. The Shers respond by pointing out that Appellants did not raise this argument until their Motion for Reconsideration and thus the circuit court could not have erred by denying an argument that was not properly raised. The Shers also argue that the arbitration provision was not ambiguous, as evidenced by the Seller's ready acquiescence to the arbitration process, and certainly not ambiguous as to Appellants.

When read alone, the arbitration provision appearing at paragraph 8.G. of the Acquisition Agreement is unambiguous and clear. The provision states:

G. *Arbitration.* If any dispute or claim arises out of this Agreement during this transaction or at any time after closing between Purchaser and Seller, or between Purchaser and/or Seller and a Broker or the Broker's sales agents assisting in this transaction, and the parties to such dispute or claim are unable to resolve the dispute through mediation, which shall be pursued prior to arbitration, then such dispute or claim shall be decided by neutral binding arbitration before a single arbitrator. DPR, Dispute Prevention Resolution, of Honolulu, Hawaii is selected as the arbitrator for this purpose. Judgment upon an award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator may

---

6. The Acquisition Agreement states no intent to confer any benefit to Cella or Tezac personally; of all the Appellants, the agreement refers only to CBIP.

7. There exists no dissonance between this court's holding that Appellants were intended third-party beneficiaries and our conclusion that they received no direct benefit from the Acquisition Agreement. As described earlier, the obligation to pay the broker's commission was not created by the Acquisition Agreement, but rather resulted from the Listing Contract executed by the Seller and CBIP. That, on its own, does not mean that the Seller and the Shers did not intend to explicitly confer a benefit on Appellants as a result of the Acquisition Agreement.

award reasonable attorney's fees and costs to the prevailing party.

However, the Acquisition Agreement also contains a provision granting different remedies to the purchaser on default by the seller:

5. *Default by Seller.* If Seller willfully defaults hereunder, Purchaser shall have such remedies as Purchaser is entitled to at law or in equity, including, but not limited to, specific performance.

In *Luke,* the Hawai'i Supreme Court considered a contract containing default and arbitration clauses worded similarly to the two quoted above and held that an ambiguity existed in that dispute resolution language; an ambiguity that could only be resolved by construing it against the drafter. 105 Hawai'i at 249, 96 P.3d at 269. The Hawai'i Supreme Court found in favor of the purchaser, who was attempting to avoid arbitration. *Id.*

We cannot conclude that the two aforementioned provisions of the Acquisition Agreement in this case are ambiguous as to the purchaser who chooses not to exercise a remedy in law or equity, but chooses arbitration. The arbitration provision in the Acquisition Agreement is not ambiguous and invalid as against Appellants since the remedies other than arbitration were only available to the purchaser, not to Appellants. Although the arbitration provision of the Acquisition Agreement is not ambiguous as to Appellants, it is not enforceable against Appellants for aforementioned reasons.

### IV.

For the foregoing reasons, the "Order Granting Plaintiffs Edward Sher and Mona Sher's Motion to Compel Mediation and Arbitration" filed on November 10, 2005 and the "Order Denying Defendants Robert J. Cella, CBIP, Inc. dba Coldwell Banker Island Properties, and Tom Teza[c]'s Motion for Reconsideration of Order Granting Plaintiffs Edward Sher and Mona Sher's Motion to Compel Mediation and Arbitration Filed May 24, 2005 and, Alternatively, for Clarification and Certification Under Rule 54(b) HRCP" filed on December 23, 2005 in the

Circuit Court of the Second Circuit are reversed.

